NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENJAMIN E. SMITH, | |
| Plaintiff, | Civil No. 17-09238 (RBK/JS) |
| v. | **OPINION** |
| CRONIN LAW FIRM LLC | |
| and | |
| JOSEPH D. CRONIN, | |
| Defendants. | |

**Kugler,** United States District Judge:

This suit arises from plaintiff Benjamin E. Smith's ("Plaintiff") treatment during his employment at Cronin Law Firm for Joseph D. Cronin (collectively, "Defendants"). Presently before the Court is Defendants' motion to dismiss (Doc. No. 6) Plaintiff's complaint. For the reasons set forth below, Defendants' motion is **DENIED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This case arises from alleged unlawful employment discrimination, breach of contract, and wage issues. (Compl. at 1). Joseph D. Cronin[2] employed Plaintiff first as a law clerk and

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Accordingly, for purposes of this motion, the Court adopts and accepts as true the facts as pled in the Complaint.
[2] An adult individual believed to reside in Haddonfield, NJ. (Compl. at 2).

ultimately as an associate at the Cronin Law Firm.³ (*Id.* at 2). Plaintiff is an attorney and licensed to practice law in both Pennsylvania and New Jersey.⁴ Plaintiff began working for Defendants in August 2015. (*Id.* at 4). By October 2016, Plaintiff had passed the bar exam and was a full-time associate for Defendants. (*Id.*).

In December 2016, Defendants entered into an oral agreement ("Agreement") with Plaintiff, Attorney Joshua Thomas, and Attorney Tony Tancini. (Compl. at 4). Under the Agreement, five percent of contingency cases settled by the firm would be paid to each attorney who worked on the cases, 33.3% of the firm's contingency fees for cases an attorney originated would be paid to that attorney, and 20% of fees generated from hourly cases that an attorney originated would be paid to that attorney. (*Id.* at 4-5). In or around January 2017, Defendants paid two bonuses to Plaintiff for "a little over $5,000 each" for two cases that had settled, pursuant to the terms of the Agreement. (*Id.* at 5).

In or around June 2017, Defendants settled a case that resulted in a $920,000 total recovery. (*Id.*). Plaintiff earned a bonus of roughly $10,000 based on that contingent fee. (Compl. at 5). Defendants did not pay Plaintiff that bonus in breach of the Agreement. (*Id.*). Around the time of the $920,000 settlement, Defendant Cronin circulated text messages with Stacy Sloan, Defendants' former office manager, indicating that he was concerned with the terms of the Agreement regarding bonuses and that he wanted to change the terms. (*Id.*). In or around July 2017, the firm settled another case resulting in a $225,000 total recovery. (*Id.* at 6). Plaintiff earned a bonus of approximately $4,000 for that case. (Compl. at 6). Defendants did not pay

---

³ A Pennsylvania limited liability corporation with its "principal places" of business at 1500 JFK Blvd., Suite 1010, Philadelphia, PA 19012 and Two Executive Campus, 2370 Route 70 West, Suite 402, Cherry Hill NJ 08002. (*Id.*).
⁴ Though he resides in Philadelphia, PA. (*Id.*).

Plaintiff that bonus in breach of the Agreement. (*Id.*). At some point, Plaintiff also originated a case in which his own mother was a client through which he was entitled to a $500 fee, and a case with another client couple, through which he was entitled to at least a $500 fee. (*Id.* at 8-9).

On or about August 16, 2017, Plaintiff discovered text messages sent by Defendant Cronin and his agents that included derogatory jokes about Plaintiff's Asian race. (*Id.*). These included messages referring to Plaintiff as "little motherf*****," "little boy," "child," and "baby" by Defendant Cronin. (*Id.*). In a separate message, an employee of the firm referenced Plaintiff with a picture of a purported "Samurai" with the caption: "Me Doggie Gotta Poopie So Me So Late." (Compl. at 6). Defendant Cronin responded saying, "Haha. Classic!" (*Id.* at 7). Later that morning, Defendant Cronin went on to repeatedly verbally indicate how funny he thought the picture was. (*Id.*).

Plaintiff alleges that he was constructively discharged and forced to tender his resignation in light of the unprofessional, crude, racist, and discriminatory messages. (Compl. at 8). Plaintiff provided Defendant Cronin with a resignation letter on August 25, 2017, and requested the bonuses Defendants owed him. (*Id.*). Defendant Cronin said the bonuses were discretionary and that Plaintiff had not earned them. (*Id.*).

Plaintiff now brings the following claims against Defendants: Race Discrimination under 42 U.S.C. § 1981 (Count I); Race and National Origin Discrimination under the New Jersey Law Against Discrimination ("LAD") (Count II); Hostile Work Environment under LAD (Count III); New Jersey Wage Payment Act (Count IV); Breach of Contract or, in the Alternative, Unjust Enrichment (Count V); Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI); Fraud (Count VII); Conversion (Count VIII); and Accounting (Count IX). (*See* Compl.).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**III. DISCUSSION AND ANALYSIS**

Defendants have moved to dismiss Plaintiff's complaint. We take each of their arguments in turn.

**A. Count I Is Properly Plead As A Race Claim And Implicates 42 U.S.C. § 1981.**

Section 1981 prohibits discrimination on the basis of race. 42 U.S.C. § 1981. It does not, however, provide protection for an individual based "solely on the place or nation of his origin." *Saint Francis College V. Al-Khazraji*, 481 U.S. 604, 613 (1987). Defendants contend that Plaintiff's allegations are not valid discrimination claims because "they are pointed to his nationality rather than his race." (Def. Br. at 5).

For the purposes of this motion only, Plaintiff concedes that this is a case with no "direct evidence" of discrimination yet and instead relies on an "indirect evidence" theory of discrimination. (Pl. Opp. at 9); *Wesler v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 231, 234-35 (D.N.J. 2014). When relying on an indirect evidence theory of discrimination, a plaintiff must demonstrate a *prima facie* case. This requirement is not onerous. *Wesler*, 3 F. Supp. 3d at 234; *see also Sempier v. Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). Instead, such a *prima facie* case must simply raise an inference of discrimination. *Wesler*, 3 F. Supp. 3d at 235.

In order to properly raise such an inference, a Plaintiff must show: (1) he or she was a member of a statutorily-protected class; (2) he or she was aggrieved by an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of illegal discrimination. *Howard v. Blalock Elec. Service, Inc.*, 742 F. Supp. 2d 681, 700 (W.D. Pa. 2010) (citing *Shah v. Bank of America*, 598 F. Supp. 2d. 596, 604 (D. Del. 2009)). The specific elements of a *prima facie* case generally "depend on the facts of the particular case"

before the court and "cannot be established on a one-size-fits-all basis." *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999).

In this case, Defendants argue that there is no evidence of acts perpetrated against Plaintiff due to his race. (Def. Br. at 6 ("Plaintiff simply fails to link the alleged discrimination with his race")). They are incorrect. Defendants themselves cite to *EEOC v. JBS USA, LLC*, 2016 U.S. Dist. LEXIS 110697 (D. Neb. Aug. 19, 2016) as providing guidance for this case. They argue that case came out the way it did because the physical characteristics or cultural attributes of Somali people were not attacked. (Def. Br. at 4-5). Such an argument is *extraordinarily* hard to reconcile with the photo and text message attached to Plaintiff's Complaint. This photo and message invoke every conceivable physical, cultural, and linguistic stereotype about Asians. (*See* Compl. at 7). The photo shows a samurai in traditional clothing holding a blade with the caption, "Me Doggie Gotta Poopie So Me So Late." (*Id.*). The Court need not even discuss the matter further, as the photo and caption speak for themselves as to racial stereotyping. But in the name of completeness, Plaintiff's physical appearance, cultural heritage, and linguistic accent were unmistakenly attacked due to his race. Plaintiff further alleges that he was constructively discharged when he was forced to tender his resignation in light of such a work environment. (Compl. at 8). As such, Defendants' argument cannot stand—42 U.S.C. § 1981 is properly invoked here.

### B. Plaintiff Has Sufficiently Plead Adverse Employment Action As To Count II.

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Cokus v. Bristol Myers Squibb Co.*, 362 N.J. Super. 366, 378 (N.J. Super. 2002) (citing *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)). In order to establish a claim for constructive discharge in New Jersey a Plaintiff must show that "the employer

knowingly permitted conditions of discrimination that were severe or pervasive and that they were also so intolerable that a reasonable person subject to them would resign" *Donelson v. DuPont Chambers Works*, 206 N.J. 243, 266-67 (2011) (internal quotations omitted). "Intolerable conditions" mean "outrageous, coercive and unconscionable [employment] requirements." *Jones v. Aluminum Shapes*, 339 M.J. Super. 412, 428 (Super. Ct. App. Div. 2001). The situation must be so intolerable to a reasonable employee that they are forced to transfer. *Cokus*, 362 N.J. Super. at 379.

This is, definitionally, a factual inquiry. And while Defendants argue that the picture in question was simply "a minor annoyance," the picture and message could very likely be considered racist and deeply offensive. At this point, we must simply determine whether Plaintiff has plead facts sufficient to proceed. As such, dismissing the LAD claim here would be premature. Plaintiff has sufficiently plead adverse employment action under the LAD; Defendants allegedly fostered a work environment—through overt racism in the office demonstrated, at this stage, by the text messages and picture provided in Plaintiff's Complaint— that was so offensive that "[a]ny reasonable person in Plaintiff's position would feel compelled to resign." (Compl. at 8). Plaintiff has cleared the *Iqbal* bar. 556 U.S. at 680.

### C. Plaintiff Has Properly Plead His Hostile Work Environment Claim

Plaintiff has plead both a 42 U.S.C. § 1981 hostile work environment claim and an LAD hostile work environment claim. (*See* Compl.). Defendants move to dismiss the LAD hostile work environment claim.[5] (Def. Br. at 9).

---

[5] As such, we need not discuss the Third Circuit's factors for proving the existence of an actionable hostile work environment under Title VII.

A hostile work environment claim under the LAD requires that the alleged harassment: (1) would not have occurred but for [Plaintiff's] membership in a protected category; (2) was severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993). Defendants argue that Plaintiff's clam must fail for lack of severity or pervasiveness. (Pl. Br. at 9-10). They are incorrect.

Under New Jersey law, a single incident *can* be enough to establish a hostile-work environment claim. *Lehman*, 132 N.J. at 606-07; *see also Daniel v. T&M Prot. Res., LLC*, 689 F. App'x 1, 2 (2d Cir. 2017) (The one-time use of the slur "n*****" constituted enough evidence to survive summary judgment as to the plaintiff's hostile work environment claim). But determining whether harassing conduct is actually sufficiently severe or pervasive is a highly fact-intensive inquiry. *See Ingram v. Vanguard Grp., Inc.*, 2015 U.S. Dist. LEXIS 93016, at *53-54 (E.D. Pa. July 17, 2015). At this juncture, we need not conduct such an analysis, so Defendants' argument as stated is premature. Instead, the question we must address is simply whether Plaintiff has sufficiently plead a *plausible* hostile-work environment claim. *Iqbal*, 556 U.S. at 679. Plaintiff has.

**D. Plaintiff Has Sufficiently Plead Fraud**

In New Jersey, a fraud claim requires five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 510 (1997). According to Plaintiff's pleadings, the Agreement at issue here was honored for some time. Defendants argue

8

that because Plaintiff was in fact paid the agreed upon percentages for a number of cases, Plaintiff's fraud argument must fail. Again, they are incorrect.

We must determine whether Plaintiff sufficiently plead a plausible fraud claim. He has. It is sufficiently plausible that, as Plaintiff suggests, Defendants were comfortable with the Agreement for smaller settlements but not larger ones and never intended to pay Plaintiff a bonus over some predetermined number. There are numerous other plausible scenarios that adequately reconcile Defendants' initial payments with an omnipresent, *ex ante* intent to not honor the Agreement. The alleged material misrepresentation present at the time of the Agreement or prior to the Agreement is simply an intent to abide by its terms—Defendants said that they would pay the bonuses when they really never intended to. Whether Plaintiff can prove the requisite elements of fraud at later stages in this litigation remains an open question. But Plaintiff has satisfactorily plead such ill intent here.

**IV. CONCLUSION**

For the reasons stated above, Defendants motion to dismiss (Doc. No. 6) is **DENIED**. An appropriate order shall issue.

Dated:   04/13/2018                                         s/Robert B. Kugler  
                                                            ROBERT B. KUGLER  
                                                            United States District Judge